May it please the court, I'm James Rice, I'm the attorney for Mr. Brajas-Avalos. Mr. Brajas-Avalos was the underlying defendant in a criminal action. He was the owner of a piece of property with his brother and father in rural Oregon in Washington County. After surveillance and a trespass by federal and state agents into the property, a search warrant and an arrest warrant were issued, and Mr. Brajas-Avalos was arrested on the property itself. He was represented by counsel at trial, and a motion to suppress was filed. Judge Redden heard the motion itself, and Mr. Brajas-Avalos was arrested on the property itself. When that motion was denied, Mr. Brajas went to trial. He was convicted of manufacturing methamphetamine and conspiracy to manufacture methamphetamine. Mr. Brajas urges the court here to reverse the finding of Judge Redden on the motion to suppress. We feel that the judge erred in a couple of areas. This is a de novo review, and of course it's the clear error standard that we would be looking at for the court. The first thing that Mr. Brajas would like to point out is that the search itself was an area that's the curtilage of his home. The property itself is- What was the home, counsel, to which you're referring? It was a trailer, Your Honor. It was a trailer that was used by the family. Sometimes they spent the night in the trailer. It sort of had a dual function. The family itself had a home more in town, but they also resided on the property at times because they were going out to work. What's your best evidence to support your proposition that the trailer was used as a home? What in the record supports your proposition? In the excerpt of record of page 110, Your Honor, the father of my client testifies that people slept at the home. A second thing you could look at are the photographs that are also in the excerpt of record, which show bedding. It shows the interior of the trailer itself. When were those photographs taken? The photographs were taken after the arrest of Mr. Brajas by Mr. Matazar. Did they show the condition of the travel trailer on the day the officers were there? I believe they're reasonable depictions, Your Honor, of the premises as it was when he was arrested. Didn't the officers testify there was no bedding, no furniture, there was a mattress with a mouse nest, and that's all they saw? Your Honor, they did testify to a mattress, and there are photographs of that there. The fact that there was a mouse, and they pointed out that somewhat almost jokingly, I think there's lots of places that have mice. And the fact that there are millions of cats in the United States in fine homes goes to show that a mouse being in a house or a trailer of some kind isn't indicative of non-use. The description that's in the record is different from what is depicted in the photographs, isn't that true? I would say there's some, I'm not sure the record is complete as to everything that was there. Isn't a poor person's home the same as a rich person's home? It is, Your Honor. If we go back into common law, they talk about the castle being the same as a hovel. I remember being born and raised in a house where there was no electricity, and born and raised in a house where there was no indoor plumbing, because we were very, very poor, and we lived in Eureka, Nevada. Was that the evidence in this record? That was my home. And that's true. So how do you determine, legally, that a trailer is not somebody's house? Well, I think you can look at use, Your Honor, and ask people what they did it. And things are somewhat different today, too. There are many people who have more than one home. We might live in Portland but have a home at the coast or a home at the mountains or a home on the stream. And when it comes to rural life, there's been somewhat of a change in terms of raising children or children isolated living on farms. And Mr. Bras here did have both Senior, Ramon, and my client had separate homes. It doesn't mean that they couldn't have a rural home that they used for, one, recreational purposes, and also, two, protecting the curly willow crop from elk. And the elk and the deer would come in at night, and that was one of the reasons that they, in fact, spent the night there. They had a permit, which is part of the record, where they essentially fired blanks chasing away elk. There was an outdoor plumbing facility outside, which meant that people were using it. And if they were using the toilet, they were using the house, weren't they? And it wasn't a sophisticated setup, but there certainly are indicia. There's cooking equipment that was there. There are other indicia that, in fact, the place was used. And as I said, Mr. Bras testifies that they did spend the night there. Counsel, is there any evidence in the record that Judge Ferguson's circumstances were present here, that this family was poor, and that's why this trailer was used as a home? Is there any evidence in the record to substantiate that position? I don't think there's evidence of poverty, but there is evidence that these people came from rural Mexico and worked outdoors. They're working in an agricultural setting. This is typically indicative of a middle class or lower middle class individuals who are actually farm laborers. What was the value of the home, their main home? Their main, Mr. Bras, the defendant's main home, which is actually separate from his father's, was valued at over $500,000. It's up in the West Hills. However, the value of the home, you have to take a look at what's the mortgage that's involved in the home as well. And the equity in the home, I believe, was about $75,000. Thank you. The home that we have here is immediately adjacent to the area the search took place, so it's the defendant's position that it's within the curtilage of the home. And we can look at the four factors in the Dunn decision to take a look at, is it in fact within the curtilage? Number one, it's very close to the trailer where the search took place itself. Number two, the property is secluded. In fact, the reason for the trespass by the police officers in this case was they couldn't see where they wanted to go. In other words, there was both a fence surrounding the 30 acres. There's one access road which is locked, and there's a gate on it, and there's a no trespassing sign. The government's brief described it as a generic trespassing sign. I'm not quite sure what that is. But in any event, the gate was locked, and it's surrounded by a natural barrier to, in fact, keep it as a private area itself. So there is an enclosure. The steps that were taken to protect it from observation are its location itself being surrounded by trees. As I said, in addition to the fence, there's barbed wire, no trespassing signs itself. Counsel, what is it you are seeking to suppress? Are you seeking to suppress whatever was seized pursuant to the search warrant? We are, Your Honor. Now, let's assume we buy your theory that this was a dwelling house and this was a curtilage. Talk to me about whether, excluding that, there were sufficient observations by the officers that the search warrant could stand anyway. Your Honor, I don't believe there isn't. The government raises that in their brief. And as you go through the criteria that are there, if we take the illegality, the evidence that was legally seized when they applied for the search warrant itself, the first paragraph is sort of a lengthy recitation that there is an organization out there manufacturing methamphetamine itself. And they had information from an informant involving this defendant. Involving this defendant, allegedly. And that directed them to the right. At least it focused an inquiry on Mr. Braha itself. They also cite in their brief the fact that he had purchased some MSG, which is an agent that can be used and also has other legitimate purposes, especially in agriculture. And they also found a large quantity of containers that contained precursors. There were – it would be a precursor element that was found not on his property, at a separate location itself. Well, adjacent to? Adjacent to. So if, in fact, they felt they had sufficient evidence, what they could have, of course, done at that point in time is go and ask for a search warrant. But they didn't do it. And I think what we can read into that is that even they believed that they had insufficient time. I see my time is almost up. So I urge the Court to, in fact, reverse the decision of the trial court judge in this case. I also have two additional errors on sentencing matters that have been briefed as well. Thank you, Counsel. Thank you, Your Honors. Good morning. May it please the Court, Fred Winehouse, U.S. Attorney's Office. Judge Ferguson, I understand your comments about whether or not this was the residence. But I'm sure that when you were a young man, you were at that residence occasionally. And in this case, the police – You would only have one residence, one home? You're not saying that, do you? No, Your Honor. But in this case, the police surveilled the residence eight times over a course of several weeks. And there was nobody that was ever seen there at night. See, I know people have a home on Malibu and Palm Springs and Lake Tahoe and Hawaiian Islands. And they only go to the islands once every five years. But that's their home, isn't it? Your Honor, the only difference here is that the defendant's father testified that during the summer he was there on one occasion. And the search took place in October. Now, Judge Redden, sitting directly below this court, took two days to hear these witnesses. And he wrote a 27-page opinion. And it's our position he got it right. He stated that there was no electricity, no water, no septic tank. There was no bedding. The only thing the officer saw was a mouse in the trailer. There were no of the accoutrements of life in that trailer, Your Honor. And I don't think the Fourth Amendment was designed to protect against the officer. Well, what about the Fourth Amendment on three trespasses? Yes, Your Honor. Officers have a right to trespass on somebody's property, isn't that the fruit of the law? Yes, sir, they have the right. But if they trespass against a resident, then we're in trouble. If they trespass and you determine this was a resident. Oh, you can only trespass as a resident? You can't trespass on commercial property? Yes, you can trespass on commercial property. You can trespass on commercial property? Yes. So it doesn't have to be a resident? No, Your Honor. Okay. But in this particular case, it was not a resident. Well, if they trespassed. Yes. And they obtained evidence as a result of the trespass. Isn't that the fruit of the poison tree? No, Your Honor, because it was not a resident. But you're telling me that you cannot trespass over industrial property. It doesn't have to be a home in order to violate the trespass laws. But this court has said there's no connection between a trespass and a motion to suppress if there was not a Fourth Amendment issue. And in this case, there wasn't because it wasn't a resident. What's your best case authority for that proposition, counsel? I think that would be the Dunn case that was cited, Your Honor. Hasn't the Supreme Court talked about trespass and open fields and so forth? Yes, Your Honor. And what has the Supreme Court told us? The issue is whether or not the trespass occurred in connection with a resident and then the curtilage. If you find a resident and then there's a curtilage where something was obtained, then there can be a motion to suppress. If there is no residence and therefore no curtilage, then the fact that there was a trespass doesn't make it a violation of the Fourth Amendment. Is that true? Yes, Your Honor. And what's the name of the case that says that? I believe that was the Hester case, Your Honor. But in this case, Judge Redden was specific to point out no septic system, water source. The trailer contained no food, dishes, cooking utensils, or clothing. And even if this court determines this was a resident. Well, counsel, I want to go back again. Are you saying that the trespass laws only applies to residential properties? No, Your Honor. The cops can't enter business property and trespass, can they? No. They violate the law, don't they? Yes. And whatever they find as a result of their trespass is the fruit of the poison tree. So it doesn't have to be a house. No, in this case it has to be a residence because that's what the court has said. Your Honor, even if you conclude this was a residence, then you have a second area you have to get to. And that's to determine if this was curtilage. And how can it be curtilage if it was just used to manufacture methamphetamine? You look at the proximity, the use, the things that the owner did to keep it private. But most importantly, you look at the use. And we cited the cases where the curtilage was used for marijuana in one case, methamphetamine in another case. And this court has said there was no Fourth Amendment protection because of the use. Those of us who believe in property rights are amazed at your statement that the trespass laws only apply where there's a residence. Your Honor, I'm not saying these officers can't be charged in state court with trespassing. They did trespass, but the issue is does that affect the Fourth Amendment? And what they obtained as a result of their trespass led to this case. And that's the fruit of the poison tree. No, Your Honor, no. Am I wrong? Yes. Why am I wrong? Because of the court's opinions on the open fields issue. If it's not a residence that's used as a residence, then I have a violation. Trespass laws only apply to houses. The other issues, I think the court was correct in determining Judge Reddin had no discretion, had discretion to depart, chose not to. The defendant was sentenced under the guidelines because of the amount of drugs, the weapon, the obstruction. The guidelines called for this sentence, and he got the low end of the range. Thank you. Counsel, do you agree with opposing counsel on the standard of review? Yes, Your Honor. So, in your view, this is a de novo standard of review? Well, on the legal issues, but not on the trespass. What is the legal issue in terms of the Fourth Amendment claim? What is the legal issue in your view? We all agree on that. The legal issue is whether or not this was legitimate curtilage where the methamphetamine equipment was found. But it's highly factual, highly factual. So, is it a legal issue or is it a factual issue? Well, from our point of view, it's a factual issue. Was Judge Reddin clearly erroneous in concluding the trailer was not a residence? Because I thought opposing counsel said it was de novo. Well, that's on the legal issue. Your Honor, this court has said a tent can be a residence. A hole in the ground can be a residence. But in this case, when you look at the facts, this was not a residence. You can't forget the eight separate surveillances these officers conducted. I think that's the key to the case. You're stating that de novo review only applies to legal issues in this case. And factually, it's very erroneous. Is that your position, that the de novo review only applies to legal issues? Yes. Okay. Thank you. The case just argued stands. Admit it. The next case on calendar for argument, I know I'm going to butcher this name, is Safandavong v. Palmentier. Thank you.
judges: Alarcon, Ferguson, Rawlinson